ELECTRONICALLY FILED

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| ESTATE OF NAOMI PRESSMA, by its Executor Conrad Pressma, 1405 Rosewood Avenue Louisville, KY 40204<br><br>Plaintiffs,<br><br>v.<br><br>ITM TWENTYFIRST SERVICES, LLC 333 South 7th Street, Suite 2400 Minneapolis, MN 55402-2435<br><br>    SERVE VIA REGISTERED AGENT: ITM TwentyFirst Services, LLC c/o Corporation Service Company 2345 Rice Street, Suite 230 Roseville, MN 55113<br><br>and JOHN DOE, UNKNOWN DEFENDANT Address Unknown<br><br>Defendants. | Civil Action No. 3:21CV-34-BJB<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The Estate of Naomi Pressma, by its Executor Conrad Pressma (the "Estate"), through their undersigned counsel, hereby files and submits this Complaint against Defendants, ITM TwentyFirst Services, LLC ("ITM"), and John Doe (together "Defendants"), and in support thereof, allege and say:

## PARTIES

1. Plaintiff, the Estate of Naomi Pressma, with address of 1405 Rosewood Avenue, Louisville, KY 40204, was established in Kentucky after the death of Naomi Pressma, a resident of Louisville, Jefferson County, Kentucky. Mrs. Pressma was at all times relevant to this Complaint a citizen of the State of Kentucky. The Executor of the Estate is Mrs. Pressma's son,

Conrad Pressma, also a resident of Louisville, Jefferson County, Kentucky and a citizen of Kentucky. The Estate of Naomi Pressma is a citizen of the State of Kentucky.

2. Upon information and belief, ITM is a manager-managed limited liability company organized under Delaware law with its principal place of business located at 333 South 7th Street, Suite 2400, Minneapolis, MN 55402. Upon information and belief, ITM's manager is Longevity Holdings Inc., a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Upon information and belief, ITM is a citizen of the State of Delaware.

3. If and to the extent that ITM did not act solely on its own behalf to obtain and retain for itself the death benefit proceeds of one or more life insurance policies insuring the life of Mrs. Pressma, upon information and belief, ITM was retained by John Doe, to act as its agent in connection such policies. The Estate lacks information sufficient to form a belief as to John Doe's location, organization, residency, or citizenship.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Estate, a citizen of Kentucky, and ITM, a citizen of Delaware, and because the amount in controversy exceeds $75,000.

5. This Court possesses specific personal jurisdiction with respect to Defendants in this action because, among other things, ITM, acting on its own behalf or as John Doe's agent, has had extensive personal contact with the forum that relates to the core subject-matter of this action, including action within the forum to monitor, service, maintain, and collect or assist in collecting on a life insurance policy that insured the life of a Kentucky resident (the now deceased Naomi Pressma). Upon information and belief, these activities of ITM, acting on its own behalf or as John Doe's agent, included contacting Mrs. Pressma within the forum while she was living to monitor her health, and—after she passed away—requesting from members of her family residing within the forum assistance in successfully obtaining a copy of Mrs. Pressma's death certificate from Jefferson County, Kentucky. Upon information and belief, these activities of ITM, acting on

its own behalf or as John Doe's agent, also included ITM, acting on its own behalf or as John Doe's agent, using the Kentucky death certificate to collect or assist in collecting the death benefit proceeds from the policy on the life of Naomi Pressma, a Kentucky resident.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within the Western District of Kentucky, Louisville Division. In addition to the allegations above, this cause of action arose within the forum and relates to a life insurance policy that insured the life of Mrs. Pressma, who was at all relevant times a resident of Louisville, Kentucky. Moreover, the Estate is located in this forum. Relevant witnesses and sources of information and documents relating to the application for the policy and its issuance are believed to be located within this forum. Additionally, upon information and belief, witnesses, documents and sources of information relating to ITM's efforts, acting on its own behalf or as John Doe's agent, to obtain and use the Kentucky death certificate for Mrs. Pressma are believed to be located within this forum.

## **FACTS COMMON TO ALL CLAIMS**

7. This action concerns a life insurance policy that is controlled by and subject to Delaware law, including because, upon information and belief, the policy was applied for by and delivered to a Delaware statutory trust in Delaware, and thus was a Delaware trust owned policy as defined in Delaware's insurable interest statute, 18 *Del. C.* § 2704.

8. As stated by the Supreme Court of Delaware, it is well recognized that, "[s]ince the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1069 (Del. 2011). Insurance policies which are procured as a wager on the life of the person insured not only violate Delaware public policy and its constitutional prohibition on wagering, but they also violate the state's insurable interest requirement, which precludes investors from manufacturing life insurance policies for the purpose of resale. *Id.*

9. Although human life speculators have been a problem for hundreds of years, never has this problem been more wide-spread or involved such vast amounts of money than in recent years. In the early 2000s, institutional investors began pooling large blocks of high-value life insurance policies into special purpose vehicles, such as tax-exempt entities or trusts, the interests of which were effectively securitized and sold to other investors.

10. It is well established, however, that in the early 2000s, there was not a sufficient supply of existing life insurance policies to satisfy investor demand. In particular, investors were interested in high face amount policies insuring the lives of senior citizens, but there were only "a limited number of seniors who had unwanted policies of sufficiently high value." *Price Dawe*, 28 A.3d at 1070. "As a result, STOLI promoters sought to solve the supply side shortage by generating new, high value policies." *Id*. These policies are often referred to as STOLI—meaning stranger origination life insurance. *Id.*

11. One such STOLI promoter was family of interrelated Delaware entities known generally as Coventry.

12. Entities such as Coventry—known in the STOLI industry as "funders"—worked with a nationwide network of insurance producers, who, acting as the funders' agents, assisted the funders by, among other things, identifying senior citizens meeting the funders' investment criteria and influencing those seniors to become involved in the STOLI transactions the funders were orchestrating.

13. The STOLI transactions orchestrated by funders like Coventry and its agents were presented to hand-selected senior citizens in rosy terms that camouflaged the transactions' impropriety as being a "risk-free" opportunity, "just a good deal," or as being similar to "hitting the lottery" or acquiring a winning "bingo" card.

14. The specific mechanisms by which each funder's STOLI program operated could and often did vary in one respect or another. But each shared basic similarities including that the

policies at issue were procured by third parties that lacked an insurable interest in the insureds and that sought to wager on the life of the insureds.

15. Not only do these STOLI policies violate public policy and constitutional bans on wagering and insurable interest laws, but they take advantage of insurers and their senior citizen insureds and otherwise convert a legitimate life insurance product into an illegitimate cash machine whereby a stranger to the insured is more interested in seeing the insured dead than alive.

16. In 2006, Coventry procured the life insurance policy (the "Policy") that is at issue in this action insuring the life of Mrs. Pressma.

17. To induce Mrs. Pressma to allow the Policy to be procured on her life, Coventry and those acting on its behalf may have represented that the Policy was being procured through a legitimate and legal transaction, or further induced Mrs. Pressma with the promise of financial compensation if she permitted the Policy to be procured.

18. In reality, however, Coventry procured the Policy through an illegal STOLI scheme and Coventry lacked a valid insurable interest in the life of Mrs. Pressma.

19. Upon information and belief, Coventry acted through its agent(s) to have an application for the Policy submitted to the insurance company that ultimately issued the Policy as a Delaware life insurance policy.

20. To facilitate these transactions, Coventry created the Naomi Presma Life Insurance Trust dated November 16, 2005 (the "Trust"), as a Delaware statutory trust, installed Wilmington Trust Company ("Wilmington Trust") as the trustee of the Trust, and used the Trust as a cover to procure the Policy without a valid insurable interest.

21. Upon information and belief, Coventry further created a sub-trust (the "Sub-Trust") to the Trust. The Sub-Trust was also established as mere cover to procure the Policy without a valid insurable interest.

22. Upon information and belief, the Policy insuring the life of Mrs. Pressma was issued and delivered in Delaware to the Trust.

23. Upon information and belief, in connection with originating the Policy, Coventry, acting through Lasalle Bank, N.A., entered into a non-recourse "loan" arrangement with the Trust, with the Policy serving as the sole collateral for the purported "loan."

24. This purported "loan" was secured solely by a security interest in the Trust and Sub-Trust that held the Policy.

25. As a result of this purported "loan," neither Mrs. Pressma nor anyone with an insurable interest in her life ever paid any premiums on the Policy. Rather, the loan was used to conceal the fact that such premiums were paid by Coventry for the purpose of creating a wager on Mrs. Pressma's life.

26. Moreover, the purpose of the Policy was not to provide estate protection for Mrs. Pressma, but rather she was used as an instrumentality to procure the Policy so that strangers with no insurable interest could wager on her early demise.

27. Upon information and belief, in connection with the purported "loan" becoming due, stranger investors unrelated to Mrs. Pressma took formal control of the Policy.

28. Upon information and belief, ITM acted for itself or as agent for its undisclosed principal, John Doe, a stranger investor that held the Policy.

29. Upon information and belief, John Doe undertook to actively conceal its identity from Mrs. Pressma and members of her family, including through the use of agent intermediaries, including but not limited to ITM.

30. On October 2, 2018, Mrs. Pressma passed away.

31. Upon information and belief, without notifying the Estate or the family of Mrs. Pressma, a claim for the Policy's death benefit was made by or on behalf of John Doe or ITM, acting for itself or as John Doe's agent, and the death benefit was then paid by the issuing insurance company to ITM, John Doe, and/or others acting in concert with them.

32. Upon information and belief, following Mrs. Pressma's death, John Doe continued to actively conceal its identity from the Estate and members of Mrs. Pressma's family, including through the use of agent intermediaries, including but not limited to ITM.

33. To the extent that other entities or individuals may also be proper defendants with respect to the claims set forth herein, they have, upon information and belief, actively concealed themselves from the Estate and from members of Mrs. Pressma's family. As a result, any such potential additional proper defendants that may exist remain unknown to the Estate.

### FIRST CAUSE OF ACTION: RECOVERY OF INSURANCE PROCEEDS DUE TO LACK OF INSURABLE INTEREST
### (Against ITM TwentyFirst Services, LLC and John Doe)

34. The Estate hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

35. The Policy is controlled by and subject to Delaware law, including because the Policy was applied for and delivered to the trustee of the Trust in Delaware, and is thus a Delaware trust owned policy as defined in Delaware's insurable interest statute, 18 *Del. C.* § 2704.

36. The Delaware insurable interest statute provides, among other things, that "no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured." 18 *Del. C.* § 2704.

37. The Delaware Supreme Court has clarified that this insurable interest requirement is not satisfied where a third party without an insurable interest uses an insured as an instrumentality to procure a policy for itself as a wager on the insured's life. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

38. Where an insurance company pays the death benefit on a policy lacking insurable interest, the "executor or administrator" of the insured is entitled to recover such benefits from the beneficiary, assignee, or payee that received the benefits as a matter of common law and

statute. 18 *Del. C.* § 2704 (b).  *See, e.g., Estate of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019).

39. Upon information and belief, the Policy at issue in this case was procured without insurable interest as a wager on Mrs. Pressma's life.

40. Regardless of whether Mrs. Pressma knew the details of this scheme or her identity was merely used as an instrumentality to procure the Policy, as set forth above, stranger investors were wagering on the life of Mrs. Pressma and hoping to trigger a secondary market cash-in on the Policy's death benefit.

41. Upon information and belief, the Policy's death benefit was paid, transferred, or otherwise assigned to ITM or John Doe, or another entity on whose behalf either or both acted.

42. As a consequence, the Estate is entitled to recover those death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages) from ITM and John Doe.

### SECOND CAUSE OF ACTION:  IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Against ITM TwentyFirst Services, LLC and John Doe)

43. The Estate hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length, and sets forth this cause of action in the alternative to the Estate's preceding claim.

44. ITM and/or John Doe's acceptance, retention and/or distribution of the Policy's death benefit proceeds has enriched ITM and/or John Doe, to the detriment of the Estate.  Given the circumstances surrounding the procurement of the Policy, allowing ITM or John Doe to retain the proceeds of the Policy is inequitable and without justification including because, among other things, the Policy was procured without insurable interest to wager on the life of Mrs. Pressma, in violation of applicable law and public policy.

45. Accordingly, the Estate is entitled to an award of the Policy's entire death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages) from ITM and John Doe.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against ITM and/or John Doe, as requested herein, together with costs of this action, and such other and further relief as this Court deems just and proper under the circumstances.

                                            Respectfully Submitted,

                                            */s/ Matthew A. Taulbee*
                                            Matthew A. Taulbee (91272)
                                            Reminger Co. LPA
                                            250 Grandview Drive, Suite 550
                                            Ft. Mitchell, KY  41017
                                            Telephone:  (859) 426-3667
                                            Facsimile:  (859) 426-7222
                                            mtaulbee@reminger.com
                                            *Co-Counsel for Estate of Naomi Pressma, by its Executor Conrad Pressma*