UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ESTATE OF NAOMI PRESSMA                                              Plaintiff

v.                                                      Civil Action No. 3:21-cv-34-RGJ

ITM TWENTYFIRST SERVICES, LLC, *et al.*                              Defendants

### MEMORANDUM OPINION & ORDER

Defendant U.S. Bank, National Association ("U.S. Bank") moved to dismiss [DE 33] and Defendant ITM TwentyFirst Services, LLC ("ITM" together with U.S. Bank, "Defendants") moved to dismiss [DE 34] the Amended Complaint [DE 27] filed by Plaintiff Conrad Pressma ("Conrad") in his capacity as Executor of the Estate of Naomi Pressma ("Plaintiff") for lack of personal jurisdiction under Federal Rule Civil Procedure 12(b)(2). The Estate responded [DE 40; DE 41] and Defendants replied. [DE 44; DE 47]. These motions are fully briefed. For the reasons below, U.S. Bank's Motion to Dismiss [DE 33] is **GRANTED** and ITM's Partial Motion to Dismiss [DE 34] is **GRANTED**.

### I.   BACKGROUND

Plaintiff alleges that ITM, U.S. Bank, and an unknown person listed as John Doe benefited and received proceeds from an illegal stranger-originated life insurance policy ("Policy") on the life of Naomi Pressma ("Naomi"). [DE 27]. Plaintiff further alleges that John Doe held the Policy at the time of Naomi's death and that John Doe wrongfully received the death benefit proceeds after Naomi died. [*Id.* at 260, 263]. ITM and U.S. Bank allegedly acted on behalf of themselves or as agents of John Doe to secure the Policy's death benefit. [*Id.* at 260].

In 2006, Delaware entities collectively known as Coventry, who are not a party to this action, procured the Policy on the life of Naomi. [*Id.* at 258–59]. Naomi was a resident of

Kentucky.  [*Id.* at 254].  Conrad, the executor of Naomi's estate, and the Estate of Naomi are citizens of Kentucky.  [*Id.*].  The Policy is "controlled by and subject to Delaware law."  [*Id.* at 304].  The Policy was applied for by and delivered to a Delaware statutory trust in Delaware, and thus was a Delaware trust owned policy.  [*Id.*].

In 2008, U.S. Bank became the securities intermediary for John Hancock Life Insurance Company ("John Hancock"), who issued the Policy.  [DE 33-1 at 295].  U.S. Bank took legal title to the Policy for the benefit of the Policy's beneficial owner.  [*Id.* at 296].  U.S. Bank, as securities intermediary, paid premiums to John Hancock's Philadelphia, Pennsylvania address through U.S. Bank's Minnesota office.  [*Id.*].

In 2016, a life settlement investor retained ITM to service the Policy.  [DE 34-1 at 319].  ITM is a limited liability company organized under the laws of Delaware with its principal place of business in Minnesota.  [*Id.* at 318].  ITM is managed by a single member, which is a Delaware corporation.  [*Id.*].  ITM provides life expectancy underwriting and longevity data and portfolio servicing to stakeholders in the life settlement markets.  [*Id.* at 319].  It does not purchase or sell insurance policies or life settlement transactions and does not facilitate, sponsor, or engage in life settlement transactions.  [*Id.*].  Accordingly, ITM does not receive death benefits for any policy for which it provides services to life settlement investments.  [*Id.*].

ITM advised Naomi, by mail, that it would begin to service the policy around December 2016.  [*Id.*].  Four ITM employees based in Minnesota made just over a dozen phone calls to either Naomi or Conrad over nearly a two-year period.  [*Id.* at 327–29].  ITM left four voicemails for Conrad, spoke with him eight times, and spoke with Conrad's wife once.  [*Id.* at 320].  However, ITM did not have a contractual relationship with Naomi or her estate.  [*Id.*].  And no ITM employee ever traveled to Kentucky to meet Naomi.  [*Id.*].  On October 16, 2018, ITM used VitalCheck, an

online research service, to order a copy of Naomi's death certificate and delivered it to the owner of the Policy. [*Id.*].

On October 25, the Policy's death benefit of $1,502,920.29 was paid by check to U.S. Bank's St. Paul, Minnesota office. [DE 33-1 at 296]. U.S. Bank promptly credited the beneficial owner's account with the full death benefit received form John Hancock. [*Id.*]. At no time did U.S. Bank contact Naomi, her family, or any other individuals in Kentucky regarding the Policy or payment of Policy proceeds. [*Id.*]. U.S. Bank declares that it never took action to monitor, service, maintain, or collect Policy proceeds and none of its documents or witnesses related to the Policy are located in Kentucky. [*Id.*].

Defendants now move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule Civil Procedure 12(b)(2). [DE 33; DE 34]. Defendants both filed affidavits to support their positions. [DE 33-1; DE 34-1]. Plaintiff has not filed an affidavit but relies on assertions in the Amended Complaint.

## II.  STANDARD

Presented with a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the Court may (1) rule on the motion based on the pleadings and affidavits alone, (2) permit discovery on the motion, or (3) hold an evidentiary hearing on the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *Serras v. First Tenn. Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Plaintiff did request discovery on the facts alleged in ITM's affidavit. [DE 40 at 342–43]. Plaintiff contends that ITM filed a "sham affidavit" and claimed ITM's assertion that it did not receive the death benefit under the Policy has been rejected.[1] [*Id.*].

---

[1] To support this argument, Plaintiff cited docket entries outside of the record and failed to attach these documents to its brief. As ITM noted, this failure is a violation of The Joint Local Rules for the Eastern and Western Districts of Kentucky. Local Rule 7.1(h). However, ITM has attached the document to their Reply. [DE 44-2].

3

However, the document suggests that ITM offered service that included collecting policy proceeds that would be paid to the client. [DE 44-2 at 459–60]. However, there is no indication that ITM provided that service here. Instead, U.S. Bank declares that it collected Policy proceeds for the Policy's beneficial owner. [DE 33-1 at 296]. Accordingly, ITM's affidavit is consistent with documents cited by Plaintiff. Moreover, no party has requested an evidentiary hearing on the personal jurisdiction, so the Court will rule based on the pleadings.

Once a defendant challenges personal jurisdiction, the burden is on the plaintiff to show that jurisdiction is proper. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). To do so, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts" showing the Court's jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When, as here, the Court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is "relatively slight, and the plaintiff must make only a *prima facie* showing personal jurisdiction exists to defeat dismissal." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen*, 935 F.2d at 1458; *AM. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)) (internal quotation marks omitted). The plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted). In resolving a motion to dismiss under Rule 12(b)(2), the Court must view the pleadings and affidavits in a light most favorable to the plaintiff and should not "weigh the controverting assertions of the party seeking dismissal." *Air Prod.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459) (internal quotation marks omitted).

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can either be specific or general depending on the type of minimum contacts in a case. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Specific jurisdiction, on the other hand, grants jurisdiction only when a claim arises out of or relates to a defendant's contacts in the forum state. *Id*.

For specific jurisdiction to exist in a diversity action, federal courts must look to the law of the forum state to determine the personal jurisdiction over parties, subject to constitutional due process requirements. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988). When a federal court's subject matter jurisdiction stems from a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)) (internal quotation marks omitted).

Kentucky's long-arm statute is codified in KRS 454.210. Under Kentucky law, to exercise personal jurisdiction over non-resident defendants, courts must follow a two-step analysis which first determines whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Caesars Riverboat Casino,*

*LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). Kentucky's Supreme Court further held that the phrase "arising from" in the long-arm statute should be interpreted to mean that the "cause of action must have originated from, or came into being, as a result of" the defendant's activities which fit into the categories listed in KRS 454.210. *Id.* at 58. Thus, even when the defendant's conduct falls within one of the enumerated categories in the long-arm statute, the plaintiff's claim still must *arise from* that conduct for personal jurisdiction to exist. *Id.* at 58–59 ("[T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction."). Only when a court has determined that the defendant's activities fit into one of the nine categories listed in KRS 454.210, should the court proceed to the second step of determining whether the exercise of personal jurisdiction would offend the defendant's federal due process rights. *Id.* at 57; *see, e.g.*, *KFC Corp. v. Wagstaff,* 502 B.R. 484, 495 (W.D. Ky. 2013*)* (applying the two-step analysis described in *Caesars Riverboat Casino* by first determining if the cause of action "arises from" conduct or activity fitting into one of the nine enumerated activities in KRS 454.210, and secondly considering whether exercising personal jurisdiction was proper under a federal due process analysis).

If, however, the defendant's activities do not fit into one of the statute's enumerated categories, "then *in personam* jurisdiction may not be exercised," and the inquiry ends. *Caesars Riverboat Casino*, 336 S.W. 3d at 57; *see, e.g.*, *Luvata Electrofin, Inc. v. Metal Processing Int'l., LP*, No. 3:11-CV-00398, 2012 WL 3961226, at *3 (W.D. Ky. Sept. 10, 2012) (explaining that the court will turn to the constitutional due process inquiry only if it first finds that it can exercise personal jurisdiction over defendants under Kentucky's long-arm statute); *Bondurant v. St. Thomas Hosp.*, 366 S.W. 3d 481, 486 (Ky. App. 2011) (citing *Caesars Riverboat Casino*, 336

S.W.3d at 57, in support of court's decision that because personal jurisdiction could not be exercised under KRS 454.210, no analysis of federal due process requirements for exercise of personal jurisdiction was necessary). Thus, there may be situations in which the defendant's activities or contacts with the forum state may be enough to satisfy jurisdiction for purposes of constitutional due process, but still not be permitted by Kentucky's long-arm statute. *Citizens Nat. Bank of Paintsville v. MCNB Bank and Tr. Co.*, No. CV 13-1369-PHX-MHB, 2013 WL 3894996, at *2 (E.D. Ky. July 26, 2013).

### III.   ANALYSIS

Defendants move to dismiss the Amended Complaint because the Court does not have personal jurisdiction. [DE 33; DE 34]. In response, Plaintiff contends that the Court has personal jurisdiction over Defendants pursuant to Kentucky's long-arm statute and the Due Process Clause. [DE 40; DE 41]. The Court's analysis is limited to whether it has specific personal jurisdiction over U.S. Bank because Plaintiff concedes that Defendants are not citizens of Kentucky, and Plaintiff does not allege Defendants had continuous and systematic contacts with the forum. [DE 27 at 255].

!!!   To determine whether the Court has jurisdiction under Kentucky's long-arm statute, the Court must analyze whether the conduct alleged against the party at issue arises from one of the nine enumerated categories of conduct set forth the in the long-arm statute. This analysis focuses on "the relationship among the defendant, the forum, and the litigation," not the harm suffered by Plaintiff. *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 339 (Ky. App. 2019) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Kentucky's long-arm statute provides in relevant part:

> (1) As used in this section, "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership,

> association, or any other legal or commercial entity, who is a nonresident of this Commonwealth.
>
> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> > 1. Transacting any business in this Commonwealth;
> >
> > 2. Contracting to supply services or goods in this Commonwealth;
>
> . . .
>
> > 7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;
>
> . . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS § 454.210. Plaintiff does not assert a particular basis for specific jurisdiction in its Complaint, merely that the Court possesses specific personal jurisdiction over Defendants. [DE 27 at 255]. However, in its Responses, Plaintiff argues the Court has personal jurisdiction over U.S. Bank under the long-arm statute's contracting to insure, transacting business, and contracting to supply goods and services provisions. [DE 41]. Plaintiff similarly argues that the Court has personal jurisdiction over ITM under the transacting business and contracting to supply goods and services provisions. [*Id.*].

   A. "Contracting to Insure"

Plaintiff argues that the Court has personal jurisdiction over U.S. Bank pursuant to Section (2)(a)(7). [*Id.* at 365]. Plaintiff claims that U.S. Bank, as owner and beneficiary of the Policy, paid premiums over a ten-year period. [*Id.*]. In response, U.S. Bank argues that Plaintiff's characterization of the law on this point is misleading. [DE 47 at 557].

Under Kentucky law, courts may exercise personal jurisdiction over an entity that contracts

8

"to insure any person, property, or risk located within this Commonwealth at the time of contracting." KRS § 454.210(2)(a)(7). Plaintiff contends that Kentucky courts have not had the opportunity to construe KRS § 454.210(2)(a)(7). [DE 41 at 365]. However, the Kentucky Court of Appeals has reviewed jurisdictional questions regarding an out-of-state beneficiary of a life insurance policy insuring a Kentucky resident. *See, e.g.*, *Bell v. Bell*, No. 2004-CA-001350-MR, 2005 Ky. App. LEXIS 232 (Ky. Ct. App. Oct. 28, 2005). The Court of Appeals directly examined whether the out-of-state defendant was "transacting business" in the Commonwealth under KRS § 454.210(2)(a)(1). *See id.* at 8. However, the Court takes guidance from *Bell* because of the similarities between the contracts at issue and because the Court of Appeals held that the plaintiff's cause of action did not arise out of any circumstance articulated in KRS § 454.210. *See id.* at 11–12. In *Bell*, a Kentucky resident had designated his ex-wife, a Florida resident, as the beneficiary of his life insurance policy. *See id.* at 2. Upon the insured's death, his ex-wife filled out the appropriate paperwork in Florida and mailed it to the insurance company in New Jersey. *See id.* She then received the proceeds of the policy in Florida. *See id.* The insured had intended to name a new beneficiary before his death but filled out the wrong paperwork. *See id.* The estate sued the insured's ex-wife in Kentucky arguing that she was unjustly enriched by the proceeds of the life insurance policy. *See id.* at 3. The Kentucky Court of Appeals affirmed the trial court's decision and held that it did not have personal jurisdiction over the insured's ex-wife because her contacts with the forum were too attenuated. *Id.* at 16.

As in *Bell*, U.S. Bank is an out-of-state defendant that only had contact with an insurance company that also resides outside of Kentucky. [DE 47 at 557]. Moreover, it received the proceeds of the Policy outside of Kentucky. [*Id.*]. Plaintiff has not asserted by affidavit or otherwise that U.S. Bank was the party who initially contracted for the policy in Kentucky. Plaintiff also has not

cited a case from Kentucky indicating that the courts would exercise personal jurisdiction over an out-of-state defendant under similar circumstances. Accordingly, Plaintiff has failed to satisfy its burden to prove that the Court can exercise jurisdiction over U.S. Bank under KRS § 454.210(2)(a)(7). *AlixPartners, LLP*, 836 F.3d at 549.

### B. "Transacting Business" and "Contracting to Supply Services"

Plaintiff argues that the Court has jurisdiction over ITM because it transacted business and supplied services in the Commonwealth by calling and mailing the Pressmas regarding Naomi's health and medical records. [DE 40 at 347–48]. Plaintiff extends this theory to U.S. Bank, arguing that ITM—acting as U.S. Bank's agent—transacted business and contracted to supply services in the Commonwealth. [DE 41 at 367]. Plaintiff incorporated its arguments against ITM into its Response to U.S. Bank's Motion to Dismiss. [*Id.*]. Therefore, whether the Court can exercise personal jurisdiction over U.S. Bank is dependent on whether ITM transacted business or contracted to supply services in the Commonwealth.[2]

Numerous federal courts in Kentucky have construed KRS § 454.210(2)(a)(1) and have taken "several different approaches." *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505–506 (E.D. Ky. 2019). Some courts have looked to the plain meaning of "transacting business" as defined in Black's Law Dictionary. *Childress Cattle, LLC v. Cain*, No. 3:17-cv-388-JHM, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017) (quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017) and stating, "Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct

---

[2] Plaintiff alleges Defendants contracted to supply services in Kentucky but does not develop the argument. In its Response to ITM's Motion to Dismiss, Plaintiff merely asserts that ITM contracted to supply services under KRS § 454.210(2)(a)(2). [DE 40 at 347]. In its Response to U.S. Bank's Motion to Dismiss, Plaintiff asserts that ITM contracted to provide services in Kentucky as U.S. Bank's agent. [DE 41 at 367]. Because Plaintiff heavily relies on an agency theory to extend personal jurisdiction to U.S. Bank, the Court focuses on the "transacting business" standard as applied to ITM.

(negotiations, business, etc.) to a conclusion'").

> Other courts have asked whether there has been "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Gentry*, 2016 WL 6871252, at *3 (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-cv-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015) ). Under this approach, an "isolated contract[ ]" with a Kentucky resident does not alone constitute transacting business. *Id.* (quoting *Modern Holdings*, 2015 WL 1481443, at *6). Thus, a non-resident defendant who enters into a one-time lending agreement with a Kentucky resident has not transacted business in Kentucky. *Id.* Similarly, the Kentucky long-arm statute does not extend to a Tennessee defendant that communicated several times with a Kentucky plaintiff by telephone and email but that provided services for the plaintiff exclusively in Tennessee. *See Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12-cv-62-S, 2012 WL 4023789, at *2-3 (W.D. Ky. Sept. 12, 2012). In contrast, a non-resident defendant that establishes an office in Kentucky, has an employee who conducts business out of that office, and pays that employee for his work in Kentucky is subject to long-arm jurisdiction in Kentucky. *Gentry*, 2016 WL 6871252, at *3.

*Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d at 505–506.

Still other Kentucky district courts have looked to the Sixth Circuit's explanation of Michigan's long-arm statute, which contains the identical phrase "transacting any business." *See, e.g.*, *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969 (E.D. Ky. 2017). The Sixth Circuit held that the "use of the word 'any' . . . establishes that *even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.*" *Id.* at 969 (alteration and emphasis in original) (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504–505 (6th Cir. 2014)).

Even viewing the allegations in the light most favorable to Plaintiff, there is no evidence that ITM was transacting business (1) by "carr[ying] on or conduct[ing] (negotiations, business, etc.) to a conclusion"; (2) through "a course of direct, affirmative actions within a forum that result in or solicit a business transaction" or (3) by reaching out to those in Kentucky to engage in even the slightest transaction. *Hall*, 359 F. Supp. 3d at 505–506; *see also Am. Trade Alliance, Inc. v. S. Cross Trading*, No. 2009-CA-001353-MR, 2011 WL 112439, at *2 (Ky. Ct. App. Jan. 14, 2011)

11

(finding that the defendant transacted business in Kentucky where it contracted to do business in Kentucky, accepted orders from and shipped goods to a Kentucky buyer, and actively promoted the sale of its products to Kentucky residents).

Plaintiff argues that ITM transacted business in the Commonwealth under the third and most lenient standard articulated above. [DE 40 at 350]. Plaintiff asserts that ITM was transacting business because it reached out to Naomi's family via phone and mail. [*Id.* at 349]. It further contends that ITM transacted business by securing a release from Naomi to review her medical records. [*Id.*]. However, these acts do not rise to the level of transacting that has been recognized in *Eat More Wings* as Plaintiff contends. The court in *Eat More Wings* found the defendant had transacted business in the Commonwealth by emailing a Kentucky resident, knowing he was in Kentucky, and asking him to "send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky." *Eat More Wings, LLC*, 282 F. Supp. 3d at 969. The plaintiff alleged that the defendant had requested the instructions to steal a signature recipe during negotiations regarding a potential business venture. *See id* at 968. The court noted that emails regarding instructions for the plaintiff's products were the basis for the action. *See id.* Unlike *Eat More Wings*, ITM was merely monitoring Naomi's health from outside the Commonwealth. There is no evidence that ITM engaged with Naomi or her family regarding a business venture or that ITM's conduct alone violate Kentucky law. *See id.*

Plaintiff also cites *Power Invs. v. Becker*, No. 5:18-466-DCR, 2018 WL 4390722, at *3 (E.D. Ky. Sept. 14, 2018) to argue that ITM was transacting business under the statute. [DE 40 at 348]. In *Power Investments*, the out-of-state defendant was soliciting money from the plaintiff who resided in the Commonwealth. *See id.* The purpose of all the calls, text, and emails, from defendant into the forum was to solicit funds to purchase a power plant. *See id.* As noted above,

ITM's calls and mail that came into Kentucky were for the purpose of monitoring Naomi's health. There is no evidence or allegations that ITM solicited funds as in *Power Investments*. Accordingly, the Court finds that *Eat More Wings* and *Power Investments* are distinguishable from the present case. Instead, ITM's actions were more akin to investigative activities taken by insurance companies after an accident. *See, e.g.*, *Tennessee Farmers Mut. Ins. Co. v. Harris*, 833 S.W.2d 850, 854 (Ky. App. 1992) (holding insurance adjusters investigating an incident in Kentucky "did not amount to the transaction of business in Kentucky for purposes of exercising personal jurisdiction").

Plaintiff has failed to allege, by affidavit or otherwise, facts necessary to support its assertions that ITM's actions amounted to "transacting business" under KRS § 454.210(2)(a)(1). *Theunissen*, 935 F.2d at 1458. Similarly, the Court cannot find that U.S. Bank has transacted business in the Commonwealth because Plaintiff relied on an agency theory to support the Court's personal jurisdiction. [DE 41 at 367]. Therefore, the Court will not reach the merits of Plaintiff's agency arguments because the Court holds that ITM has not transacted business under KRS § 454.210(2)(a)(1).

### C. Nexus under Section 2(b)

Even if Defendants' conduct had fallen into one of the nine enumerated categories, a nexus would not exist that Plaintiff's claims "originated from, or came into being, as a result of" ITM or U.S. Bank's persistent course of conduct in Kentucky. *Caesars,* 336 S.W.3d at 58. Plaintiff has alleged that ITM monitored Naomi's health through her family located in Kentucky. [DE 40 at 345]. Plaintiff also alleges that ITM retrieved a death certificate and delivered it to U.S. Bank. [*Id.*]. ITM was alleged to have acted on U.S. Bank who held the Policy for the benefit of the true owner. [DE 41 at 360]. ITM's conduct on behalf of itself or on behalf of U.S. Bank is ancillary

13

to the alleged harm under Delaware law, the owner of the Policy's receipt of Naomi's life insurance proceeds. Thus, Plaintiff fails to demonstrate a nexus sufficient to satisfy Kentucky's long-arm statute. Because Defendants' activities do not fit into one of the enumerated categories under KRS § 454.210(2)(a) and because Plaintiff fails to demonstrate a nexus that its claims originate from Defendants' conduct in Kentucky, "*in personam* jurisdiction may not be exercised," and the inquiry ends. *Caesars,* 336 S.W.3d at 57. Accordingly, Plaintiff has failed to meet its burden to show that this Court can exercise personal jurisdiction over Defendants. *AlixPartners, LLP*, 836 F.3d at 549. The Court **GRANTS** U.S. Bank's Motion to Dismiss [DE 33] and **GRANTS** ITM's Motion to Dismiss [DE 34].

## IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. U.S. Bank's Motion to Dismiss [DE 33] is **GRANTED** and U.S Bank is **dismissed without prejudice**; and

2. ITM's Partial Motion to Dismiss [DE 34] is **GRANTED** and ITM is **dismissed without prejudice**.

Rebecca Grady Jennings, District Judge
United States District Court

September 8, 2022